UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ricky Smith, #211896, | ) | C/A No: 4:08-1089-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| T. Burnell, Sargeant [sic]; John Doe, | ) | |
| Lieutenant; and South Carolina | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. PROCEDURAL HISTORY

The *pro se* plaintiff filed this filed under 42 U.S.C. § 1983[1] on April 2, 2008,

alleging violations of his constitutional rights. Plaintiff is currently incarcerated at

Walden Correctional Institution. At all times relevant to the allegations in the complaint,

plaintiff was incarcerated at Manning Correctional Institution ("MCI"). Defendants filed

a motion for summary judgment on September 30, 2008. The undersigned issued an

order filed October 1, 2008,  pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), advising plaintiff of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. Plaintiff filed a response, affidavits, and

exhibits in opposition to the motion for summary judgment.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II. DISCUSSION

## A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by <u>pro se</u> litigants, to allow them to fully develop potentially meritorious cases.  <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  <u>See</u> Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the <u>Celotex</u> case,

2

the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## B. ALLEGATIONS/ARGUMENTS/ANALYSIS

While incarcerated at MCI, plaintiff alleges that he and another inmate had a physical altercation on June 10, 2007, to which defendant Sergeant Burnell ("Burnell") responded by ordering both participants to stop and subsequently administered his MK-4 chemical munitions to plaintiff. Plaintiff asserts that after being handcuffed by Burnell, the other inmate retrieved a lock and struck him in the head. Plaintiff alleges that he attempted to defend himself from the other inmate but was taken to the ground by Burnell. In his complaint, plaintiff contends that Lieutenant John Doe entered the ward, picked plaintiff up by the restraints while Burnell held him by his throat, slammed him to the ground, and picked him up only to slam him to the ground again. Plaintiff alleges that defendants then left to respond to another altercation between two other inmates. Plaintiff asserts that "after a period of time," another officer came to escort plaintiff to administrative segregation. (Complaint). Plaintiff alleges that despite obvious injuries, he was not taken to the infirmary nor seen by a health care provider that day. Plaintiff alleges that he, along with several other inmates injured in other altercations, were removed from administrative segregation to be "transported to the infirmary at nearby Kirkland Correctional Institution." (Complaint). However, plaintiff asserts that Burnell "interceded and placed the plaintiff back into administrative segregation." <u>Id</u>. Plaintiff

states that he was seen by a nurse at 10:00 a.m. on June 11, 2007, and was given Ibuprofen and Parafon, a muscle relaxer, but despite his complaints of pain and head injury, he was not offered any further treatment. Plaintiff states that he was charged with the disciplinary offense of fighting and convicted on June 20, 2007, and was held in administrative segregation until his transfer to Allendale Correctional Institution on July 3, 2007. Plaintiff alleges that he "continued to complain about pain in his back, neck, and shoulder. Some treatment was afforded but this consisted of prescriptions for Ibuprofen and Parafon and a bottom bunk pass." Id. On October 7, 2007, plaintiff asserts he was sent to the Kirkland Correctional Institution infirmary for x-rays and returned to Allendale Correctional Institution with no follow-up care afforded despite his complaints. Plaintiff requests actual and compensatory damages of $500,000.00 and "up to the limits of the Tort Claim Act on his negligence claims against defendant SCDC." Id.

Defendants filed a motion for summary judgment and submitted affidavits and exhibits in support thereof. Defendants assert that plaintiff cannot show excessive force in that any force used by the defendants was applied in good faith to maintain or restore discipline. Further, defendants assert that plaintiff's SCDC medical records indicate he was seen by medical following the use of force alleged in the complaint and there is no evidence of serious or permanent injury arising out of the events described in the complaint.

Defendants submitted the affidavit of Burnell who attests that he is employed by the State of South Carolina and the SCDC as a Sergeant at the MCI and held the position of Sergeant at all relevant times as alleged in the complaint. Burnell attests that at all times mentioned in the complaint, he acted within the scope of his employment as an

employee with the State of South Carolina. On June 10, 2007, Burnell was on duty at the MCI and responded to an incident involving plaintiff and "at no time during my interactions with Inmate Ricky Smith did I use excessive force of any kind." (Burnell affidavit). At all times mentioned in the complaint, Burnell attests that he exercised the discretion necessary to carry out his duties, did not harm plaintiff in any way, never threatened to harm plaintiff, and was not deliberately indifferent to a substantial risk of serious harm to plaintiff. Id. Burnell avers that he does not have any responsibilities regarding the direct provision of medical care or treatment to inmates within the SCDC. Id. Attached to Burnell's affidavit was a copy of the SCDC records including a copy of the incident report from June 10, 2007, and the disciplinary report and hearing record for the June 10, 2007, offense.

A review of the incident report reveals that Burnell responded to a call and observed two inmates striking one another with closed fists in the facial area. (Incident report). Burnell gave several directives to stop to which they did not comply. Id. Burnell then dispersed two to three short bursts of chemical munitions (MK-4) to the facial area of both inmates as they continued to strike each other in the face with closed fists. Id. The inmates were later identified as Ricky Smith and Gary Hermond. Id. Burnell then attempted to restrain inmate Smith by handcuffing his right wrist when inmate Smith "then side arm curled. Inmate Smith, Lt. Boyan, and myself then fell to the floor where restraints were successfully applied and inmate was escorted to SMU." Id. The supervisor's comments were "supportive document to Lt. Boyan's report. Inmates afforded shower and medical attention by Manning medical." (Incident report). The disciplinary report and hearing record states that "Based on the narrative and testimony

5

of Sgt. Burnell and inmate's admission of guilt, inmate is guilty of engaging in a physical altercation with another inmate." (Disciplinary report and hearing record).

Defendants submitted the affidavit of Alfred Boyan ("Boyan") who attests that he is employed by the State of South Carolina and the SCDC holding the position of Lieutenant at the MCI. (Boyan affidavit). Boyan acted within the scope of his employment at all times mentioned in the complaint. Id. On June 10, 2007, Boyan was on duty at the MCI when he responded to an incident involving plaintiff and attests that at no time did he use excessive force of any kind during his interactions with the plaintiff, that he never harmed plaintiff in any way, never threatened to harm plaintiff in any way, and was not deliberately indifferent to a substantial risk of serious harm to the plaintiff. Id.

A copy of both the handwritten and typed Report on Use of Force ("Report") signed by Captain Elwood L. Session reveals that Burnell and Boyan responded to Ward 6 on July 10, 2007, and observed inmates Smith and Hermond striking each other with closed fists. (Report). Burnell pulled his gas cannister and dispersed two to three short bursts of chemical munitions to the facial area of both inmates, Smith and Hermond, when they refused directives to stop fighting. Id. It is noted that the chemical weight out was 128.0 and the weight in was 113.5. Id. Therefore, it was noted that 14.5 grams of chemical munition was disbursed. It was also noted that after the chemical munition disbursement, the inmates stopped fighting. Id. However, after plaintiff's right wrist was handcuffed, he failed to comply and, he "suddenly side curled his right arm." Id. Boyan attempted to secure plaintiff's left arm but plaintiff began kicking and head butting and they all fell on the floor in the tunnel on top of Lt. Boyan. Id. After a struggle, plaintiff's

left wrist was secured in the handcuff but Lt. Boyan received an injury to his left ankle during the struggle. Id. Only a minimum amount of force was used to subdue and restrain both inmates and both inmates were afforded a shower and seen by Nurse Arrington of Manning Medical Staff. Id.

Defendants also submitted the affidavit of Dr. Thomas E. Byrne ("Byrne")who attests that he is employed with the State of South Carolina and SCDC where he is responsible for assessing the medical needs of inmates within the SCDC and providing medical care and treatment. Dr. Byrne attests that his primary assignment is the Allendale Correctional Institution. (Byrne's affidavit). Byrne attests that he reviewed the relevant SCDC medical records regarding the care and treatment of plaintiff within the SCDC and certified that he is attaching a true and correct copy of the records. Id. Byrne attests that a review of the records indicates plaintiff has been seen by medical staff of the SCDC on a regular basis during the relevant period. Id. Byrne could not identify any evidence that plaintiff has suffered from any life-threatening illness or conditions during his period of incarceration within the SCDC or that there has exited a substantial risk of serious harm to plaintiff's health or well-being. Id. Byrne attests that based on his professional judgment, the assessment, care and treatment provided to plaintiff by the medical staff during the relevant period was appropriate in light of his medical needs and that neither he nor nay other medical staff was deliberately indifferent to any substantial risk of harm to plaintiff. Id.

A review of the medical records reveal that plaintiff was seen on June 11, 2007, by medical stating that he was restrained during a fight in the dorm and was slammed on his shoulder and buttocks. Plaintiff was complaining of pain to his lower back. It was

noted that medical observed that he had tightness in the L. Trap muscle, swelling and redness in R. Wrist, and small laceration on the top L. side of his head but no visible abnormalities were observed. He was assessed as having musculoskeletal discomfort, was prescribed medication, and told to sign up for sick call if injuries did not subside or worsened. An officer later called medical from SMU stating plaintiff was complaining of wrist and knee pain. The nurse noted that she checked inmate in SMU and he was complaining of pain in his wrist, arm, and left knee where a "slight edema" was noted. Plaintiff was informed to request Ibuprofen from the medical box and noted no bruising on the wrist or left knee. Plaintiff also complained of a "small area on scalp" and no swelling, redness, or drainage was noted. Plaintiff was instructed to turn in a sick call request if needed and he would be seen the following day. (See Medical records, Encounters 105 and 106). Plaintiff was seen by medical on June 21, 2007, complaining that he was involved in a fight on June 10, 2007, that he was suppose to be transported to Kirkland for medical treatment but was not, that the nurse came to see him later the next day with medication, but that he still needed to see a doctor and have x-rays for his injuries "3 to 4 licks to the head area with lock after being handcuffed and mased [sic] also picked up and slamed [sic] on shoulder and head while in handcuffs." (Medical Encounter 107, June 21, 2007). Plaintiff was seen by medical again on June 25, 2007, and was transferred to Allendale on July 3, 2007, in which the encounter notes he stated "I have no medical problems." (Encounters 108 and 110). On July 5, 2007, there is an encounter from the doctor's clinic and on July 9, 2007, the encounter notes that plaintiff was still hurting and wanting x-rays complaining of multiple somatic complaints and wanting x-rays. (Encounter 111). On July 13, 2007, the encounter from the doctor's

clinic, Dr. Byrne, reveals plaintiff stated he was trying to get x-rays, that he was sprayed and handcuffed, hurt his shoulder back and neck, that he had an old back injury, and the doctor stated after examination that he did not see any indication for any x-rays at that time. (Encounter 113). Plaintiff was seen several more times by medical and on October 8, 2007, plaintiff was scheduled for a x-ray of the C-spine and LS-spine at Kirkland radiology. (Encounter 120 and 121). The results of the C-spine were "there are arthritic changes noted" and the results of the LS spine were "some minimal arthritic changes are noted with some mild scoliosis." (See encounter 120).

Plaintiff filed a response to the motion for summary judgment arguing that "the use of force by Burnell and Boyan after he was restrained and removed from the living unit was unnecessary and a wanton infliction of pain." (Plaintiff's response, p.3). Plaintiff states that although the officers have denied tripping him, there was one witness who observed the officers "pushing him to the ground while he was restrained." Id. Plaintiff contends that once he was removed from the living unit, having been sprayed with mace and handcuffed, "there was no need for further force to be used in order to restore order." Id.

Plaintiff submitted the affidavit of inmate Simon K. Rains who attests that he witnessed a fight on June 10, 2007, at the MCI between plaintiff and another inmate, Gary Hermond. Rains attests that Sergeant Burnell and Lieutenant Boyan and other officers responded to the scene and Burnell sprayed plaintiff with his gas and then handcuffed him. Rains avers that inmate Hermond backed away but then approached plaintiff "while he was being restrained by Sergeant Burnell and hit him several more times." (Rains' affidavit). Rains asserts that Burnell and Boyan took plaintiff toward the

gate outside the unit and "tripped him and slammed him on the ground face first. They then picked inmate Smith off the ground and took him away." Id.

Plaintiff also submitted his own affidavit in which he states that he knelt down after being maced and Burnell "shoved me to the floor." (Doc. #38). Plaintiff asserts that both hands were cuffed, he was pulled to his knees, and then left alone. Plaintiff states that he felt someone striking him in his face and head and heard inmate Hermond talking as he was striking plaintiff. Plaintiff asserts that inmate Hermond fled the scene for a second time, and that the defendants were negligent in leaving him hand cuffed and unattended. Plaintiff attests that defendants came back, picked him up, forced him backward, tripped him, and pushed his face into the floor inside the "open ward." (Affidavit, doc. #38). Plaintiff asserts that they carried him into the tunnel area where he was slammed to the floor while in cuffs landing on his head, neck and shoulder. Plaintiff avers that he later learned that other fights were occurring in the other wards and that defendants were running from one fight to the other. Plaintiff attests that three trips were made to Kirkland Correctional Institution to be "checked out." Plaintiff attests that around 2:00-2:30 a.m., he and inmate Hermond were cuffed and loaded on the van to be transported to Kirkland but, before getting to the front gate, Burnell came running out waving for the van to stop. Plaintiff asserts that Burnell did not approach the van but the officer got out and had a brief conversation with Burnell before returning to the van and carrying plaintiff and the other inmate back to lockup. Plaintiff also attests a nurse came around and gave him a muscle relaxer to be taken three times a day.

**Excessive Force**

It is well established that the use of excessive force upon an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6-7. The objective component requires the inmate to prove that the use of force was more than *de minimis* or, in the alternative, that it was repugnant to the conscience of mankind. *Id.* at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See* Norman v. Taylor, 25 F.3d 1259, 1264 (4th Cir. 1994).

Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. *See* Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official "inflicted unnecessary and wanton pain and suffering." Hudson, 503 U.S. at 7. In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and

sadistically for the very purpose of causing harm.'" *Id.* (Internal quotations omitted). In determining whether a prison official acted maliciously and sadistically the court should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Williams, 77 F.3d at 762.

There appears to be an issue of fact as to whether or not defendants tripped plaintiff after being handcuffed. Defendants assert that Burnell, Boyan, and plaintiff all fell to the ground while attempting to handcuff him when he decided to curl his arm and began resisting. Defendants have provided affidavits and reports to this effect. However, plaintiff asserts that he was already handcuffed and further force was not necessary. Plaintiff also submitted an affidavit from another inmate who asserts he observed the incident and defendants tripped plaintiff slamming his head into the floor after he was hand cuffed. However, even assuming the plaintiff's allegations are true, the plaintiff has failed to establish a sufficient injury. As explained by the Fourth Circuit Court of Appeals in Norman v. Taylor, 25 F.3d at 1263, "absent the most extraordinary circumstances, a Plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. *Id.* at 1262-63. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973). *See also* Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (holding prison officials are entitled to use

appropriate force to quell prison disturbances, and acting under pressure without the luxury of a second chance, an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm). Here, any allegations of injury are de minimis. Plaintiff was seen by medical on several occasions and given x-rays in October have continuing to complain of soreness which were negative except for arthritic changes.

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir.1997)(concluding that a sore, bruised ear lasting for three days was *de minimis* and failed to meet the requisite physical injury to support a claim of emotional or mental suffering). Here, as discussed above, the plaintiff has not made such a showing of physical injury which is more than *de miminis*. Accordingly, it is recommended that this claim be dismissed and summary judgment granted for the defendants as to the excessive force claim.

**Deliberate Indifference to a Risk of Harm**

As previously stated, plaintiff alleges that the defendants breached their duty of care by failing to prevent further attack from the inmate on June 10, 2007. Defendants argue that his claim with regard to a failure of duty to protect fails in that plaintiff has presented no evidence that any defendant was at any time deliberately indifferent to a

substantial risk of serious harm to the plaintiff.

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all  must involve more than
>    ordinary lack of due care for the prisoner's interest or safety . .  . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . . <u>Id.</u>, at 1084.

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." <u>Ruefly v. Landon</u>, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in <u>Farmer</u>, <u>supra</u>. The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an</u>

14

excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. (Emphasis added). This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991).

The undersigned concludes that the plaintiff has failed to prove that the prison officials wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. The defendants had stopped the fight between plaintiff and the other inmate by using chemical munitions when they refused to comply with orders to stop fighting. Defendants were restraining plaintiff to remove him from the area. Plaintiff alleges the other inmate struck him again while he was left alone after being handcuffed. In the affidavit of Simon Rains that plaintiff

15

submitted, he attests from observance of the incident that "inmate Hermond backed away but then approached inmate Smith while he was being restrained by Sergeant Burnell and hit him several more times. Inmate Hermond then ran from the scene." Rains further asserts that after defendants had taken plaintiff away, they came back to Ward 6 and found inmate Hermond and took him away. The affidavit and allegations of plaintiff differ from the facts in Rains' affidavit, which plaintiff submitted, as to when Hermond attacked plaintiff. Plaintiff has not shown that defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that defendants drew the inference. Farmer, supra; Rich v. Bruce, 129 F.3d 336 (4th Cir. 1997)("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").

Assuming defendants' actions were indicative of negligence, a showing of mere negligence will not meet the deliberate indifference standard. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Neither the Fourteenth Amendment Due Process Clause, Davidson v. Cannon, 474 U.S. 344, 347 (1986), nor Eighth Amendment, Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) is violated by negligent failure to protect inmates from violence. Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants.


**Medical indifference**

Plaintiff has made allegations that defendants were indifferent to his medical

needs not giving him treatment after his alleged injuries of June 10, 2007. Defendants have asserted that this claim fails in that plaintiff was given timely and professional care. Defendants argue that the medical records indicate plaintiff was seen on numerous occasions by medical staff of the facilities and institutions in which he was housed, and these records do not indicate that plaintiff was experiencing any immediately life-threatening or other serious ailment, injury or illness at any relevant time.[2]

Based on a review of plaintiff's own pleadings and the evidence submitted, the undersigned finds that plaintiff's claims that defendants were deliberately indifferent to his medical needs fails. Any claims of medical indifference as to defendants should be dismissed as they are not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990).[3] Prison personnel may rely on the opinion of the medical staff as to the proper

---

[2] In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). . Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

[3] In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth

course of treatment. *Id.* Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Therefore, any claims against the defendants for medical indifference fails.

Additionally, as set out in detail above, plaintiff was seen in medical on several occasions, was examined by the nurses and doctors on several occasions, received medication for his complaints, and was sent for x-rays which were negative except for arthritic changes. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not shown that any conduct by these defendants "shocks the conscious" as required by Miltier v. Beorn, supra.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment. As previously stated, a

Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.


## B. QUALIFIED IMMUNITY

Defendants argue that they are all entitled to qualified immunity. Defendants assert plaintiff cannot establish that any defendant violated a constitutional right.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards

for official conduct, to the benefit of both the officers and the general public." <u>Wilson</u>, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." <u>Porterfield v. Lott</u>, 156 F.3d 563, 567 (4th Cir. 1998).

In <u>Maciariello v. Sumner</u>, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

<u>Maciariello</u>, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent or that defendants were deliberately indifferent to a known risk of harm or serious medical need. The plaintiff in this case has not done so. As stated above, plaintiff fails to present evidence of more than *de minimis* injury. Thus, he fails to show a violation of a constitutional right. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## C. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III. CONCLUSION

Based on the above reasoning, plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (doc. #25) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 20, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**